468 A.2d 1103

**ESTATE OF Edith HOFFMAN, Deceased, Appellant,**

v.

**J. Ralph HOFFMAN.**

Superior Court of Pennsylvania.

Submitted May 26, 1983.

Filed Nov. 10, 1983.

508

Henry M. Horvat, Jr., Pittsburgh, for appellant.

Thomas P. Geer, Pittsburgh, for appellee.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

The Estate of Edith Hoffman seeks to collect on a judgment note issued by Edith's former husband, Ralph Hoffman. A resolution of the issues turns upon a series of financial transactions between the Hoffmans.

In August 1971, Edith and Ralph purchased a tavern for $135,000.00. The land, valued at $100,000.00, was titled in both names; the business and liquor license, valued at $35,000.00, were titled exclusively in Ralph's name. To finance the purchase, Ralph and Edith jointly gave a $65,-000.00 mortgage for the land, and Edith supplied the $70,-000.00 balance from her own resources. Edith's funds apparently paid for the $35,000.00 cash payment on the land and Ralph's business and liquor license. To compensate Edith for his interest in the property, his portion of the closing costs, and the business and liquor license, Ralph issued the $54,947.38 demand judgment note presently before the Court.

One year later, the parties sold the tavern for slightly less than their purchase price. In that transaction, the buyer assumed the $65,000.00 mortgage on the tavern, with the Hoffmans pledging their marital abode to the mortgagee as additional collateral. The two took from the buyer a $40,000.00 second mortgage with monthly payments over a five year period of $792.84. They also received a cash payment of $20,823.77 in the form of a check which was deposited in one bank and immediately paid out to another bank for the purchase of a certificate of deposit in the name of "Mrs. Edith Hoffman, in trust for John Ralph Hoffman."

"One who deposits money in a savings account in [her] own name in trust for another establishes a totten trust." *In re Estate of McFetridge*, 472 Pa. 546, 550, 372 A.2d 823, 825 (1977). *See* 20 Pa.C.S. 6304(b). By creating a Totten trust, Edith retained complete control of the funds and could revoke the trust at will. If she did not revoke the trust, any balance in the account at her death inured to Ralph. *McFetridge, supra.*

From November 1972 until November 1977, payments for the second mortgage were sent to the Hoffmans. Ralph received the first seven payments, amounting to $5,549.88. Ralph and Edith jointly received the next six, amounting to $4,757.04. Edith received the remaining forty-seven, amounting to $37,163.48.

In January 1974, the judgment note was filed and judgment confessed.

In December 1975, Ralph deeded to Edith his interest in the marital property. Edith sold the property one year later for $47,500.00, and after satisfying the mortgage and paying closing costs she received net proceeds of $32,-000.00. To satisfy the mortgagee's continued request for collateral on the tavern mortgage, Edith placed these proceeds, along with an additional $8,000.00, into another Totten trust with Ralph as beneficiary.

Finally, in June 1978, Ralph divorced Edith and one month later Edith died. Edith's estate then sought execution on Ralph's note, and Ralph succeeded in opening judgment. In its opinion, the lower court found that the transactions outlined above were relevant to the value of the judgment note and reduced Ralph's balance on the note to $7,000.00.

The trial court reached its award by the following calculations.[1] Since Ralph's interest in the tavern amounted to $50,000.00 in the land plus $35,000.00 in the business and liquor license, his $85,000.00 portion in the $135,000.00

---

[1]. See Appendix at "Trial Court Calculations" for a balance sheet of the following calculations.

tavern placed his interest in the tavern proceeds at 62.96%. This left Edith's interest at 37.04%. To start, Ralph issued the judgment note for $54,947.38 in August 1971. Interest to October 1972 raised the note's value to $58,793.69. From this figure the court deducted $13,110.65 as Ralph's 62.96% interest in the $20,823.77 check from the sale of the tavern. This reduced Ralph's balance to $45,683.04 as of October 1974. Interest to December 1976 raised Ralph's liability by $11,420.76 to $57,103.80. The trial court next deducted the following three sums: $23,750.00 as Ralph's one-half interest in the marital property, $2,378.52 as one-half the value of the six monthly payments jointly received, and $17,471.02 as Ralph's 62.96% in the thirty-five monthly payments received by Edith to December 1976. These three deductions amounted to $43,599.54, and reduced the balance to $13,-504.26 as of December 1976. After adding $742.72 for interest to November 1977, the court deducted $4,991.72 as Ralph's 62.96% interest in the ten monthly payments received by Edith to November 1977. Finally, the court deducted $2,255.76 as amortization on the principle debt and as an offset from other accounting adjustments, arriving at a balance of $7,000.00 plus interest from November 1977. The Estate of Edith Hoffman appeals.

The first issue on appeal is the relevancy of the transactions that followed the purchase of the tavern. The facts of the transactions reached the trial court upon stipulation. Appellant, however, stipulated to the transactions on condition that the court would rule them relevant. Appellant now argues that the court erred in its ruling because the transactions were not formally linked to the judgment note. Appellant would have us consider the financial dealings between Edith and Ralph as matters dealt with at arm's length between business associates, and would require Ralph to show a direct link between the judgment note and the subsequent receipt of funds. We cannot accept this reasoning.

The law furnishes no test of relevancy, but tacitly refers it to *logic and general experience.* Evidence is

admissible which tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties.

*Gregg v. Fisher,* 377 Pa. 445, 454, 105 A.2d 105, 110 (1954) (emphasis added). *See Reichman v. Wallach,* 306 Pa.Super. 177, 452 A.2d 501 (1982). "Relevant evidence must in some degree advance the inquiry and thus have probative value." *Bowers v. Garfield,* 382 F.Supp. 503, 510 (E.D.Pa.), *aff'd* 503 F.2d 1398 (3rd Cir.1974). *See* C. McCormick, *McCormick's Handbook on Evidence,* 318–19 (1972); 1 Wigmore, *Evidence* § 29 (1940 & Supp.1983).

■ Although neither party presented direct evidence connecting the judgment note to the subsequent transactions, we believe that, based upon "logic and general experience" the trial court was justified in finding that Ralph and Edith Hoffmans' financial dealings were interrelated. Edith retained Ralph's share of the check from the tavern sale and the forty-seven installments on the second mortgage. Since Ralph earned his share of these payments from an investment made possible by Edith's loan, it would be inequitable to hold that Ralph's payments to Edith were not repayments on the loan. Otherwise the situation would be one where Edith loaned money to Ralph for an investment, Edith received Ralph's returns from the investment, and Edith continued as a creditor of Ralph for the full amount of the loan, leaving Ralph with nothing. Nothing in the evidence suggests that the transactions were inter vivos gifts from Ralph to Edith. The most logical inference is that the subsequent dealings were payments on the note. In these circumstances, evidence of subsequent transactions between husband and wife is relevant to the balance remaining on a judgment note.

■ The remaining issues concern the trial court's computation of credits to Ralph for the transactions that followed the issuance of the note. Edith's estate first alleges that the trial court erroneously credited Ralph for his portion of the check from the sale of the tavern. Specifically, Edith's estate alleges that Ralph should not be credited for his

share of the check from the sale of the tavern because the funds were paid jointly to Ralph and Edith and channelled through a joint account before being placed into the Totten trust which ultimately benefitted Ralph. The check was issued to Edith and Ralph at settlement since they were co-owners. The funds immediately passed through the joint account, but the money was paid out in a certificate of deposit in Edith's name. By the wording of the certificate, Edith specifically created a Totten trust which she alone controlled. That she chose to establish the trust with Ralph as beneficiary at her death does not disturb our ruling that Ralph was appropriately credited for his portion of the check from the tavern sale. We believe that the trial court's ruling to credit Ralph for his portion of the check is amply supported by the record. The Totten trust gave Edith the power to terminate Ralph's interest at will. *McFetridge, supra.* Once Edith obtained the funds in the account she could do with them as she wished and she chose to maintain absolute control over the money throughout her lifetime. Ralph was therefore properly credited for his share of the funds that Edith used to establish the trust.

Appellant also alleges error in the trial court's accounting for the mortgage payments made to the Hoffmans by the buyer of the tavern. In its computation for these payments the court credited Ralph for the forty-seven payments to Edith; failed to credit Edith's estate for the seven payments made to Ralph; and credited Ralph for one-half of the six payments made to both parties. Appellant does not challenge the validity of the credits to Ralph for his portion of the funds paid exclusively to Edith. Appellant challenges the other two credits made by the court. We agree that both of these credits were erroneous.

■ First, since Ralph was credited for funds received by Edith, the estate should be credited for those made to Ralph. The trial court apparently overlooked this point of

equity. Crediting the estate for this error increases Ralph's liability by $2,048.68.[2]

■ The court also erroneously credited Ralph for one-half of the payments jointly received. Absent evidence that Ralph did not receive his share, the Court must assume that he did in fact receive his portion of the funds paid to both parties. Because no evidence of this nature was presented, nor did the trial court otherwise support this credit, we must vacate the $2,378.52 therein granted to Ralph.

■ Finally, appellant contends that the trial court erroneously valued Ralph's interest in the marital property. The court's $23,750.00 credit represents one-half of the gross proceeds for the $47,500.00 sale of the property. As appellant alleges, this credit overlooked the mortgage payment and closing costs which limited net proceeds to $32,000.00 and thereby set the value of Ralph's interest at only $16,000.00. Since the court credited Ralph for $23,750.00, a correction of this error further increases Ralph's liability by $7,750.00.

Although both parties make subsidiary arguments concerning Ralph's interest in the property, upon review, we find them unconvincing.

The trial court's order is therefore adjusted to increase the balance remaining on the judgment note by the following amounts: $2,048.68 crediting Edith's estate for her share of the second mortgage payments received by Ralph; $2,378.52 eliminating Ralph's credit for the mortgage payments jointly received; $7,750.00 correcting the value of Ralph's interest in the marital property; and $669.68 adjusting the November 1977 interest credit to account for the above adjustments.[3] This sets the balance remaining on the note at $19,846.88 plus interest from November 1977.

2. $2,048.68 represents the $792.84 amount of each payment, multiplied by the seven payments to Ralph, multiplied by the 37.04% which the trial court determined represents Edith's interest in the payments.

3. See the Appendix at "Calculations with Adjustments" for clarification of these amounts.

The order of the Court of Common Pleas of Allegheny County is therefore affirmed in part and reversed in part, in accordance with this Opinion.

## APPENDIX

| Trial Court Computations | | Calculations with Adjustments |
|---|---|---|
| 54,947.38 | Original Value August 1971 | 54,947.38 |
| + 3,846.31 | Interest to October 1972 | + 3,846.31 |
| 58,793.69 | | 58,793.69 |
| − 13,110.65 | Ralph's interest in check from sale of | − 13,110.65 |
| 45,683.04 | tavern | 45,683.04 |
| 11,420.76 | Interest to December 1976 | + 11,420.76 |
| 57,103.80 | | 57,103.80 |
| − 23,750.00 | Ralph's interest in marital abode | − 16,000.00 |
| − 2,378.52 | Ralph's interest in monthly payments jointly received | 0.00 |
| 0.00 | Edith's interest in monthly payments received by Ralph | + 2,048.68 |
| − 17,471.02 | Ralph's interest in monthly payments received by Edith to December 1976 | − 17,471.02 |
| 13,504.26 | | 25,681.46 |
| + 742.72 | Interest to November 1977 | + 1,412.40 |
| − 4,991.72 | Ralph's interest in remaining monthly payments received by Edith | − 4,991.72 |
| 9,255.26 | | 22,102.14 |
| − 2,255.26 | Credit for amortization and other accounting adjustments | − 2,255.26 |
| $7,000.00 | Balance not including interest from November 1977 | $19,846.88 |